IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **RAYMOND D. JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   CIVIL NO. 07-696 JP/LAM |
| | ) |
| **MICHAEL J. ASTRUE, Commissioner** | ) |
| of the Social Security Administration, | ) |
| | ) |
| **Defendant.** | |

# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 15*) (hereinafter "*Motion*"). Senior United States District Judge James A. Parker referred the claims raised in the *Motion* to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary.[2] The Court has reviewed the *Motion* and Plaintiff's *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* (hereinafter "*Memorandum in Support*") (*Doc. 16*), Defendant's *Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (hereinafter "*Response*") (*Doc.19*), Plaintiff's *Reply in Support of Motion to Reverse or Remand Administrative Agency Decision* (hereinafter "*Reply*") (*Doc. 20*), the pleadings filed in this case and relevant law.

---

[1]**Within ten (10) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

[2]*See* **Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals and Prisoner Cases** *(Doc. 6).*

Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court recommends that Plaintiff's **Motion** be **GRANTED** and this case **REMANDED** to the Commissioner of Social Security (hereinafter, "Commissioner") for further proceedings consistent with this Memorandum Opinion and Order.

## I.  Procedural History

It appears that on August 23, 2005, Plaintiff, Raymond D. Jones, filed applications for disability insurance and supplemental security income benefits.[3] *See* **Memorandum in Support** *(Doc. 16)* at 3 and *R.* at 11. Plaintiff "has had a below the knee amputation since nine (9) months of age due to the congenital absence of his right foot," and he "has required the use of a prosthesis throughout his life to help him ambulate." *See* **Memorandum in Support** *(Doc. 16)* at 2; *see also R.* at 122. Plaintiff has "required repeated amputations further up his right lower extremity due to abnormal growth and bone spurs." *See* **Memorandum in Support** *(Doc. 16)* at 2; *see also R.* at 126. Plaintiff states that in "about March 2004, [he] began having significant pain in [sic] at his amputation site but attempted to continue working." *See* **Memorandum in Support** *(Doc. 16)* at 2.[4] Plaintiff's applications were denied at the initial and reconsideration levels. *R.* at 43-48 and 166-71. Plaintiff requested a hearing (*R.* at 41) and Administrative Law Judge (hereinafter "ALJ") William Musseman conducted a hearing on December 8, 2006. *R.* at 172. Plaintiff was present and testified at the hearing. *R.* at 175-182. Plaintiff was represented by an advocate at the hearing. *R.* at 174. On

---

[3]The applications are not part of the *Record*.

[4]Plaintiff cites to the *Record* at *R.* 122 to support this statement, but the Court notes that *R.* 122 does not make any mention of Plaintiff's pain allegations or Plaintiff attempting to continue working.

2

January 23, 2007, the ALJ issued a decision denying Plaintiff's applications and finding that he was not under a disability as defined in the Social Security Act. *R.* at 8-17. On February 5, 2007, Plaintiff requested that the Appeals Council review the ALJ's decision (*R.* at 7), and on May 25, 2007, the Appeals Council issued its decision denying Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *R.* at 4-6. On July 23, 2007, Plaintiff filed his complaint in this action. *See* **Complaint** *(Doc. 1).*

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). This Court's assessment is based on a meticulous review of the entire *Record*, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency. *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214. While the Court may not reweigh the evidence or try the issues

*de novo*, its examination of the *Record* as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).

For purposes of disability insurance benefits and supplemental security income, a person is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A) and 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation process has been established for evaluating a disability claim. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520 and 416.920. At the first four steps of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful activity; that he has a medically severe impairment or combination of impairments; and that either his impairment(s) meet or equal one of the presumptively disabling impairments listed in the regulations under 20 C.F.R., Part 404, Subpart P, Appendix 1,[5] or that he is unable to perform his past relevant work. *See Grogan v. Barnhart*, 399 F.3d at 1261 (10th Cir. 2005); 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Id.*

---

[5]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in 20 C.F.R. § 404.1509 (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), he will be found disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 404.1520(d); *see also* 20 C.F.R. §§ 416.909, 416.920(a)(4)(iii) and 416.920(d).

## III.  Plaintiff's Age, Education, Work Experience
## and Medical History; Vocational Expert

Plaintiff was thirty-nine years old on the date of the ALJ's decision.  *See Memorandum in Support (Doc. 16)* at 2.[6]  He testified at the administrative hearing that he worked for Wal-Mart from October 2005 to December 2005.  *R.* at 176.  Plaintiff also reports having past work experience as a laborer, cashier and housekeeper. *R.* at 78-79. Plaintiff's medical records document treatment from Colorado Springs Orthopaedic Group (James M. Rees, M.D.), (*R.* at 121-24), MDSI Physician Services (Stephen Morrison, D.O.) (*R.* at 126-29), and Peak Vista Community Health Centers (Michael Welch, D.O.) (R. at 138-60).  The *Record* includes a "Physical Residual Functional Capacity Assessment" of Plaintiff by Ruth Potter, S.D.M., dated October 4, 2005.  R. at 130-37.  Where relevant, Plaintiff's medical records are discussed in more detail below.

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ's decision should be remanded for three reasons: First, that the ALJ erred in applying "the grids" at step five because they did not account for Plaintiff's non-exertional impairments; second, that the ALJ failed to state that he considered the lay witness statement of Plaintiff's brother; and third, that the ALJ's credibility assessment is not supported by substantial evidence because no treating source questioned Plaintiff's credibility.  *See Memorandum in Support (Doc. 16)* at 1, 5-13.  As relief, Plaintiff asks the Court to reverse or, alternatively, remand the Commissioner's decision.  *Id.* at 13.  Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because it is based on substantial evidence.  *See Response*

---

[6]The ALJ's decision and Defendant's *Response* state that Plaintiff was thirty-eight years old at the time of the ALJ's decision (*R.* at 16, *Response (Doc. 19)* at 2); however, Plaintiff's date of birth is stated as September 17, 1967, in his medical records (*e.g., R.* at 121 and 124), which would make him thirty-nine years old at the time of the hearing.

5

(*Doc. 19*) at 7. The Court will consider the issue of Plaintiff's credibility first because that determination affects the Court's findings on the ALJ's use of the grids and consideration of the lay witness statement.

### *A. Plaintiff's Credibility*

Plaintiff states that "the ALJ's credibility assessment is not grounded in the evidence and simply is a conclusion in the guise of findings." **Memorandum in Support** *(Doc. 16)* at 11 (emphasis omitted). Plaintiff claims that the ALJ erred in relying on the Residual Functional Capacity finding by Ruth Potter, S.D.M., because it is a "non-examining, non-medical assessment of [Plaintiff's] functional limitations." *Id.* Plaintiff also contends that evidence in the *Record* "clearly support[s] [Plaintiff's] allegations of severely diminished functional capacity due to his lower extremity amputation." *Id.* at 12 (citing *R.* at 119, 153, 154). Plaintiff contends that the ALJ erred in failing to note Plaintiff's "consistent attempts to work during the period at issue as reflecting positively upon [Plaintiff's] allegations of disabling pain and functional limitations." *Id.*

Defendant responds that the ALJ properly rejected Plaintiff's allegations of pain by noting that "physical examinations showed Plaintiff had no joint instability and he had normal motor strength, sensation, and reflexes," there was "no skin breakdown or ulceration of the stump," and Dr. Morrison found "that Plaintiff had no restrictions on sitting and could stand/walk for two hours in an eight hour day and lift/carry up to ten pounds." **Response** *(Doc. 19)* at 4 (citations to *Record* omitted). Defendant states that "Plaintiff's admission that his pain medication controlled his pain" further supported the ALJ's credibility assessment. *Id.* Defendant states that the ALJ did not rely on Ms. Potter's assessment, but, instead, "noted that it was consistent with the evidence," and that the

6

ALJ stated that he gave greater weight to evidence from Plaintiff's treating and examining physicians. *Id.* at 4-5.

An ALJ's findings on credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)) (holding that ALJ's credibility determination was inadequate where decision simply recited general factors he considered, without explaining the specific evidence relevant to each factor, and then said claimant was not credible based on those factors). An ALJ's decision, "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p, 1996 WL 374186 at *4. The ALJ may consider factors such as persistent attempts to find relief from pain, use of medications, willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with doctors, and daily activities. *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987) (citations omitted). The Tenth Circuit has "emphasized that credibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quotation omitted).

In making his finding that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform the full range of sedentary work, the ALJ stated that Plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." *R.* at 15. This is the entire extent of the ALJ's credibility assessment of Plaintiff,

7

and the Court finds that it is inadequate. The ALJ does not clarify which "statements" by Plaintiff, or which of Plaintiff's "symptoms" he finds not credible, making it impossible for the Court to determine why the ALJ found that Plaintiff was not credible. The ALJ does not link his determination to any evidence in the *Record*, nor does he include any specific reasons for his credibility assessment. In addition, the ALJ does not state that he considered any of the factors that would be appropriate to consider here, such as attempts by Plaintiff to find relief from his pain, use of medications, use of crutches, regular contact with doctors, daily activities, the statement from Plaintiff's brother, or Plaintiff's prior work history and attempts to work. Thus, while it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citations omitted). When the ALJ's credibility determination is not supported by substantial evidence, as in this case, a remand is required. *See Kepler*, 68 F.3d at 391-92. The Court, therefore, recommends that this case be remanded to the Commissioner for a reevaluation of the ALJ's credibility assessment.

### B. ALJ's Step Five Application of the Grids

Next, Plaintiff claims that the ALJ's decision at step five was premised on "his direct application of Grid rule 201.27," and that the ALJ's application of the grids was legal error because the grids did not account for Plaintiff's non-exertional limitations as established by his medical evidence. **Memorandum in Support** *(Doc. 16)* at 5. Plaintiff claims that Michael Welch, D.O., and physician's assistant Gregory Morris, PA-C, completed an assessment form identifying two non-exertional limitations for Plaintiff: (1) that Plaintiff "would need to lie down periodically throughout the day to relieve pain," and (2) that Plaintiff would likely have to miss work more than two days per

week because of pain. *Id.* at 5-6 (citing *R.* at 138).[7] Plaintiff states that the ALJ "discredited" these limitations because the ALJ found that "there was no objective support for such restrictions." ***Memorandum in Support*** *(Doc. 16)* at 6. Plaintiff contends that the ALJ should not have discredited these limitations because: (1) Dr. Welch and Mr. Morris had treated Plaintiff for pain "for nearly one year prior to providing the physical capacity evaluation;" (2) Plaintiff "was routinely followed for pain complaints and was prescribed both Elavil and Amitriptyline for his pain;" and (3) other evidence in the *Record* supports these limitations. *Id.* at 6-7. Plaintiff claims that the ALJ should have sought "testimony from a vocational expert to determine the precise effect that [Plaintiff's] non-exertional impairments would have had on the range of unskilled sedentary work available to [Plaintiff]," especially since the ALJ found that claimant's past work experience was "unskilled." *Id.* at 7.

Defendant responds that the ALJ did not err when he applied the Grids to Plaintiff's case, because "[t]he mere presence of pain does not preclude reliance on the Grids because disability requires more than the mere inability to work without pain." ***Response*** *(Doc. 19)* at 5 (citations omitted). Defendant states that "[r]eliance on the grids is proper when the Plaintiff's pain testimony is not fully credible," and "when the impairment does not limit the range of the jobs available or the range of Plaintiff's activities." *Id.* at 6 (citations omitted). Finally, Defendant contends that the ALJ properly relied on the Grids because Plaintiff's age, education, work experience, and residual functional capacity coincided with the criteria for Grid Rule 201.27. *Id.* at 6.

The grids provide the Commissioner "administrative notice of the number of jobs that exist in the national economy at the various functional levels (*i.e.*, sedentary, light, medium, heavy, and

---

[7]The Court notes that Dr. Welch's evaluation actually states that Plaintiff would have to miss more than two days per *month*, not week, because of pain. *R.* at 138.

9

very heavy)." *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984) (citing 20 C.F.R. pt. 404, subpt. P, App. 2, 200.00(b)).  If the ALJ's findings of fact regarding an individual's age, education, training, and RFC all coincide with the criteria of a particular rule in a grid, the Commissioner may conclude that jobs suitable for the claimant exist in the national economy and that the claimant is, therefore, not disabled.  *See Channel*, 747 F.2d at 579.  The grids may not, however, be fully applicable to claimants with nonexertional impairments because the grids classify RFC based only on exertional or physical strength limitations.  *See Channel*, 747 F.2d at 580; 20 C.F.R. 404.1567. Nonexertional impairments are medically determinable impairments, including pain, that do not directly limit physical exertion, but may reduce an individual's ability to perform gainful work nonetheless.  *Channel*, 747 F.2d at 580.  If nonexertional impairments narrow the range of possible work the claimant can perform, the Commissioner may only use the grids as a "framework" for determining whether, in light of all the claimant's impairments, he or she has meaningful employment opportunity within the national economy.  *See* 20 C.F.R. pt. 404, subpt. P, App. 2, 200(e)(2); *see also Sandoval v. Barnhart*, No. 06-2097, 197 Fed. Appx. 801, 803, 2006 WL 2964431 (10th Cir. Oct. 18, 2006) (finding that ALJ erred in relying conclusively on the grids where ALJ had recognized claimant's back pain as a severe impairment at step two).  In such cases, the ALJ must produce a vocational expert to testify whether specific jobs appropriate to the claimant's limitations exist in the national economy.  *Channel*, 747 F.2d at 581.

In this case, the ALJ makes no findings about whether Plaintiff has a significant nonexertional impairment, and thus, does not properly rely on the grids.  While the ALJ states that if Plaintiff has nonexertional limitations, the grids are to be used as a framework for decision making (*R.* at 17), the ALJ does not state whether he finds that Plaintiff has nonexertional limitations.  It appears from the

*Record* that Plaintiff's pain may reduce his ability to perform gainful work, and, if so, the ALJ may only use the grids as a framework to determine whether Plaintiff has meaningful employment opportunity, and the ALJ may need to produce a vocational expert to testify. The Court recommends that, on remand, the Commissioner make a determination of whether Plaintiff has a nonexertional limitation and apply the grids appropriately in light of that determination.

### *C. Consideration of the Lay Witness Statement*

Finally, Plaintiff challenges the ALJ's failure to consider a statement from Plaintiff's brother, Kevin Jones, that supports Plaintiff's allegations of pain and functional limitations. ***Memorandum in Support*** *(Doc. 16)* at 8; *R.* at 119 (Kevin Jones states that Plaintiff complains of "pain in his right leg from blistering," that Kevin Jones "ha[s] seen the blisters and short term bleeding," that Kevin Jones is a "retired medic," that "[t]here is no way [Plaintiff] will ever work a full time job," and that Plaintiff "needs frequent care"). Plaintiff claims that the ALJ erred because he "makes no mention of the testimony of [Plaintiff's] brother." ***Memorandum in Support*** *(Doc. 16)* at 9 (emphasis omitted). Defendant states that Kevin Jones' statement "is essentially the same as Plaintiff's testimony, and the ALJ properly discredited his testimony." ***Response*** *(Doc. 19)* at 6. Defendant contends that the ALJ stated that he considered all the evidence in the *Record*, and "the ALJ should not be required to list the reasons for rejecting the brother's statement when it provided no evidence not already contained in the record and was essentially a repetition of Plaintiff's testimony." *Id.* at 6, 7.

The Social Security regulations provide that evidence from non-medical sources, including relatives, may be used to show the severity of an impairment and how it affects a claimant's ability to work. *See* 20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4). The Tenth Circuit has held that the

11

ALJ is not required to make specific written findings regarding each witness' credibility, as long as it is clear from the ALJ's written opinion that the ALJ has considered the witness' testimony. *See Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (citing *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996)). Here, the ALJ made no mention of Kevin Jones' statement and did not list any reasons for discrediting the statement. In addition, even if Kevin Jones' statement is essentially the same as Plaintiff's testimony, the ALJ did not discuss Plaintiff's testimony in his decision either, and, therefore, it is not clear from the ALJ's decision that the ALJ considered the substance of Kevin Jones' statement. *See Blea*, 466 F.3d at 915 (holding that the ALJ erred by failing to discuss Plaintiff's spouse's testimony or substance of Plaintiff's spouse's testimony anywhere in the written decision).

## V.  Conclusion

In conclusion, the Court **FINDS** that the ALJ's assessment of Plaintiff's credibility, use of the grids, and failure to consider a lay witness statement do not comport with relevant legal standards. Accordingly, **IT IS HEREBY RECOMMENDED,** for the reasons stated above, that Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 15*) be **GRANTED** and this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**